UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X
                  :
KUSH C. CHAKRABORTY,         :
                  :
            Plaintiff,  :
                  :
         v.          :
                  :
VALENTINA SOTO and THE RIVERSIDE  :
CHURCH,                 :
                  :
           Defendants. :
                  :
------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: November 6, 2017

16 Civ. 9128 (KPF)

OPINION AND ORDER

KATHERINE POLK FAILLA, District Judge:

In August 2015, Plaintiff Kush C. Chakraborty was fired from his job as Chief Engineer of Defendant The Riverside Church ("Riverside"). He claims that his termination was the product of unlawful discrimination against individuals of Indian extraction. In 2016, Plaintiff filed this *pro se* lawsuit against Riverside, Riverside's Director of Human Resources Valentina Soto (together with Riverside, "Defendants"), and Thomas Monti,[1] a contractor who managed Riverside's facilities. Plaintiff seeks relief under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 ("Title VII"), the New York State Human Rights Law, N.Y. Exec. Law §§ 290 to 297 (the "NYSHRL"), and the New

---

[1]    Plaintiff named Monti as a Defendant in his initial Complaint and his First Amended Complaint, the operative complaint in this case. (Dkt. #1, 15). But Plaintiff never served either pleading on Monti. (*See* Dkt. #15). Consequently, on August 8, 2017, the Court dismissed Monti from this case without prejudice pursuant to Federal Rule of Civil Procedure 4(m). (Dkt. #33). The Clerk of Court is directed to amend this case's caption as reflected above.

York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 to 8-131 (the "NYCHRL").

Defendants have moved to dismiss part of Plaintiff's First Amended Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). They argue that the election-of-remedies doctrine divests this Court of subject matter jurisdiction to entertain Plaintiff's NYSHRL and NYCHRL claims, because Plaintiff first sought redress for these claims before the New York State Division of Human Rights (the "NYSDHR"). And they insist that Plaintiff cannot maintain his Title VII claim against Soto, because that statute does not permit individual liability. The Court agrees with Defendants' arguments, and grants Defendants' motion for the reasons set forth below.

## BACKGROUND[2]

### A.    Factual Background

For purposes of this motion, the Court accepts as true the well-pleaded allegations in Plaintiff's First Amended Complaint. Riverside is a Manhattan

---

[2]    This Opinion draws on facts from several documents. The first — which is the source of the facts set forth in the "Factual Background" section of this Opinion — is Plaintiff's First Amended Complaint (the "FAC" (Dkt. #15)). The First Amended Complaint is 13 pages long, contains multiple attachments, and does not have numbered paragraphs. For the purpose of citing to pages in the First Amended Complaint, the Court will treat it (and its exhibits) as a single 13-page filing, using the page numbers assigned by this Court's electronic case filing ("ECF") system.

This Opinion also cites to the NYSDHR's June 14, 2016 Determination and Order After Investigation (the "NYSDHR Order" (Dkt. #15)). Plaintiff attached the NYSDHR Order as an exhibit to his First Amended Complaint. (*Id.*). Defendants have seized on the NYSDHR Order because it illustrates the slim daylight between the claims Plaintiff pursued before the NYSDHR and the claims he is pursuing in the First Amended Complaint. The Court will discuss the NYSDHR Order more fully in the "Procedural History" section of this Opinion. And as set forth in this Opinion's "Discussion" section, the Court will consider both the First Amended Complaint's allegations and the NYSDHR Order in adjudicating Defendants' Rule 12(b)(1) arguments.

church.  (FAC 2).  Plaintiff began working "as [Riverside's] assistant chief engineer" on July 8, 2013.  (*Id.* at 11).  And right from the start, Plaintiff claims, he encountered hostility from Monti, who belittled and harassed Plaintiff because the latter is of Indian extraction.  (*Id.*).

Monti did not work directly for Riverside:  He was a contractor for Newmark Grubb Knight Frank, and served as Riverside's Property Manager.  (FAC 11).  In that capacity, he supervised Plaintiff throughout Plaintiff's tenure at Riverside.  (*Id.* at 11-13).  When interacting with Plaintiff, Monti would refer frequently to "you Indian people," and make derogatory comments about them (e.g., "'you people are crazy' and 'you people do not understand English'").  (*Id.* at 11).

Monti's behavior went beyond insults.  When other people came to Monti's office, Monti would offer them a seat, but he never extended that courtesy to Plaintiff.  (FAC 11).  When Riverside terminated its Chief Engineer, Pete Donnolo, Riverside's Chief Financial Officer Howard Haughton asked Plaintiff "to take over [ ] Donnolo's responsibilities."  (*Id.*).  But in August 2013,

---

For ease of reference, the Court refers to Defendants' opening brief as "Def. Br." (Dkt. #27-5), to Plaintiff's opposition brief as "Pl. Opp." (Dkt. #34), and to Defendants' reply as "Def. Reply" (Dkt. #37).

Two other documents bear mention here.  The first is the December 28, 2015 complaint Plaintiff filed with the NYSDHR (the "NYSDHR Compl." (Dkt. #34); *see* NYSDHR Order 1 (identifying filing date of Plaintiff's NYSDHR Complaint)).  The second is a rebuttal letter that Plaintiff filed in further support of his NYSDHR Complaint (the "NYSDHR Rebuttal" (Dkt. #1)).  Neither document is attached to the First Amended Complaint.  And although Defendants discuss these two documents in their reply brief (*see* Def. Reply 2), they rely only on the NYSDHR Order (which, again, is attached as an exhibit to the First Amended Complaint) in their opening brief (*see* Def. Br. 2, 11-12).  For these reasons, to resolve Defendants' Rule 12(b)(1) arguments, the Court will not rely on Plaintiff's NYSDHR Complaint or his NYSDHR Rebuttal.

when Plaintiff asked Monti if he could sit in the (unoccupied, the Court presumes) Chief Engineer's office, Monti refused. (*Id.*). Instead, Monti made Plaintiff sit in Riverside's "boiler room" (or "boiler house," as Plaintiff sometimes calls it) — a dirty, dusty "open area full of ... particles of asbestos, fumes, and smoke." (*Id.* at 11-12). Sitting in the boiler room made Plaintiff sick. (*Id.* at 11). Of note, at this time Riverside employed nine "mechanics who were subordinate to [Plaintiff]"; none were Indian, and all nine worked in "small rooms with air conditioning, fans, heat, ovens[,] and refrigerators." (*Id.*).

Plaintiff attempted to resign from his job at Riverside because of Monti's "continuous insults." (FAC 11). Haughton refused to accept Plaintiff's resignation. (*Id.*). Instead, Riverside promoted Plaintiff to Chief Engineer. (*Id.*). But Monti's discrimination continued: He persisted in making "statements to [Plaintiff] about [his] being Indian." (*Id.*). And it also appears that Monti refused to let Plaintiff move to the Chief Engineer's office, even after Plaintiff assumed the Chief Engineer role at Riverside. (*See id.* at 11-12). In December 2014, Monti directed an "asbestos removal contractor to work in [Plaintiff's] area" in the boiler room. (*Id.* at 12). This asbestos removal, too, made Plaintiff sick. (*Id.*). Plaintiff "never saw [ ] Monti treat other employees as bad as this." (*Id.*).

Believing that Monti was discriminating against him because he is Indian, Plaintiff contacted Haughton and Soto. (FAC 12). They assured Plaintiff that they would speak with Monti, although the First Amended Complaint suggests that they did not follow through. (*See generally* FAC).

Monti continued harassing Plaintiff. (*Id.* at 12). In January 2015, when Plaintiff informed Monti that he needed to take sick leave because his work conditions had made him ill, Monti "was angry that [Plaintiff]" had not first gotten permission to take leave. (*Id.*). And in "February or March 2015," Monti threatened to fire Plaintiff if he took seven days off from work to visit his terminally ill aunt in Calcutta, India. (*Id.*). Plaintiff did not make the trip. (*Id.*). All the while, Monti allowed other Riverside employees to take "leave, vacation[,] and sick time." (*Id.*).

Around this same time, Monti again ordered "asbestos workers" to work near Plaintiff's work space. (FAC 12). When Plaintiff asked Monti why he could not make these workers "come at night," Monti responded by telling Plaintiff to "just [ ] go and do [his] job." (*Id.*). Plaintiff e-mailed Soto about this incident, but here too, it is unclear whether Soto responded. (*Id.*).

Then, in late February 2015, Monti changed Plaintiff's work schedule. (FAC 12). From the time he was hired at Riverside until February 2015, Plaintiff had worked from 4:00 p.m. to 12:00 a.m. (*Id.*). Those hours "were best for" Plaintiff, because they allowed him to take his wife to her morning doctor's visits. (*Id.*). Monti knew about these doctor's visits. (*Id.*). But he changed Plaintiff's schedule so that Plaintiff worked from 2:00 p.m. to 10:00 p.m. (*Id.*). And thereafter, Monti changed Plaintiff's schedule again to 8:00 a.m. to 4:00 p.m. (*Id.*). Plaintiff "believe[s] [Monti] changed [his] hours to make [Plaintiff] quit because [Monti] did not like working with Indian people." (*Id.*). Plaintiff complained to Haughton and Soto, who told Plaintiff that he needed "to

work the hours that [ ] Monti wanted." (*Id.*).  Eventually, Plaintiff, Soto, and Haughton reached a compromise:  Plaintiff would work from 11:00 a.m. to 10:00 p.m.  (*Id.*).  Upon learning of Plaintiff's new shift, Monti "was annoyed that [Plaintiff]" had escalated the issue "to Human Resources."  (*Id.*).

Monti continued to harass Plaintiff (and spew anti-Indian rhetoric) throughout early 2015.  (FAC 13).  Monti also undercut and "shouted at" Plaintiff "in front of [Plaintiff's] subordinates."  (*Id.*).  "[A]t some point in 2015," Plaintiff tried for a second time to resign from his position at Riverside.  (*Id.*).  And again, Haughton refused, telling Plaintiff that he was doing good work.  (*Id.*).

In April 2015, Plaintiff took Soto to the boiler room to show her where he worked.  (FAC 13).  Plaintiff told Soto "that [he] was being discriminated against as an Indian," and Soto saw "dirt, dust[,] and asbestos particles falling on [Plaintiff's] table."  (*Id.*).  Soto ordered Monti to move Plaintiff to the Chief Engineer's office.  (*Id.*).  The First Amended Complaint suggests that Monti complied, although Plaintiff adds that "Monti continued to harass [Plaintiff] to try to get [him] to quit."  (*Id.*).

On August 12, 2015, Soto and Monti terminated Plaintiff "without any prior notice."  (FAC 13).  Soto explained to Plaintiff that Plaintiff was being fired because Monti "was not happy with [his] performance."  (*Id.*).  Soto demanded that Plaintiff leave Riverside that day — without first saying goodbye to his coworkers or Haughton.  (*Id.*).

Plaintiff recounts that earlier in 2015, "another Indian employee, Mr. Ali" was also fired. (FAC 13). When Plaintiff asked Monti why Ali was let go, Monti told Plaintiff that "Ali was a thief." (*Id.*). Plaintiff does not believe this to be true. (*Id.*). And Plaintiff also recalls that after he was terminated, Ali "came to see [Plaintiff], … told [Plaintiff] it was difficult to work with [ ] Monti … said that [Monti] does not like Indian people[,] and suggested that [Plaintiff] get another job." (*Id.*).

Throughout Plaintiff's employment at Riverside, Soto always "took [ ] Monti's side" whenever Plaintiff complained about Monti. (FAC 13). Plaintiff told Soto that Monti was harassing him because he is Indian. (*Id.*). But Soto did not "protect[ ] [Plaintiff] from [Monti's] harassment." (*Id.*). Instead, she terminated Plaintiff "at [Monti's] request," despite the fact that Plaintiff was good at his job. (*Id.*). Plaintiff believes that "they" (Monti and Soto, the Court assumes) terminated Plaintiff "because [ ] Monti did not like to work with Indians." (*Id.*). Plaintiff also believes that he "was fired in retaliation for reporting [ ] Monti's discrimination." (*Id.*).

## B.    Procedural Background

The thrust of Defendants' motion to dismiss is that Plaintiff cannot pursue his NYSHRL and NYCHRL claims here, because he already pursued them before the NYSDHR.[3] Addressing that argument requires the Court to

---

[3]    Monti sought relief under the NYSHRL, not the NYCHRL, in his NYSDHR proceeding. (NYSDHR Order 1). But as the Court will explain later in the text, that does not limit the scope of the election-of-remedies doctrine — it prevents Plaintiff from pursuing the NYSHRL *and* NYCHRL claims he makes in the First Amended Complaint.

compare the claims Plaintiff filed in his NYSDHR administrative action with the claims he raises in his First Amended Complaint. With that goal in mind, the Court considers how Plaintiff's NYSDHR action unfolded, then recounts the procedural history of his federal lawsuit.

### 1. Plaintiff's NYSDHR Action

On December 28, 2015, Plaintiff filed a complaint against Riverside with the NYSDHR. (NYSDHR Order 1).[4] Plaintiff alleged that Riverside had engaged in discrimination and retaliation because of Plaintiff's race, "color," and age, in violation of the NYSHRL. (*Id.*). The NYSDHR disagreed. After conducting an investigation into Plaintiff's claims, it determined that there existed no probable cause to conclude that Riverside had discriminated or retaliated against Plaintiff. (*Id.*).

The NYSDHR reached that conclusion after reviewing the evidence and considering Plaintiff's arguments. Plaintiff had alleged that everyone at Riverside — including Riverside's "HR Director" — was "satisfied with his performance, except" for Monti. (NYSDHR Order 1). Monti, Plaintiff claimed, "never liked him." (*Id.*). And Plaintiff attributed this to the fact that Riverside's CEO selected Plaintiff for his position at Riverside, and thus that Monti "did not personally hire" Plaintiff. (*Id.* at 1, 3).

In his NYSDHR proceeding, Plaintiff complained about many of Monti's actions. Plaintiff alleged that Monti had forced him to work in Riverside's

---

[4]     Plaintiff simultaneously filed a charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC"). (FAC 3). On September 7, 2016, the EEOC adopted the NYSDHR's findings and dismissed Plaintiff's charge. (*Id.* at 9).

"boiler house" — an "unsafe environment" — for two years. (NYSDHR Order 1). And Plaintiff further claimed "that Monti [was] 'very much against the Asian community.'" (*Id.* at 2). In support of this claim, Plaintiff informed the NYSDHR that Monti had fired Ali from Riverside. (*Id.*). Plaintiff also alleged that he had twice complained internally — once in November 2014 and again in February 2015 — about the discrimination he faced. (*Id.* at 3).

But the NYSDHR did not find "sufficient evidence to establish an inference of discrimination" from the conduct Plaintiff alleged. (NYSDHR Order 3). In reaching this conclusion, the NYSDHR considered many of the incidents Plaintiff alleges in the First Amended Complaint. The NYSDHR addressed, for example, the changes in Plaintiff's work schedule in 2015. (*Id.* at 2). And it considered Plaintiff's repeated complaints about his workspace. (*Id.*).

Neither issue, the NYSDHR concluded, bespoke discrimination or retaliation. Riverside explained to the NYSDHR that Plaintiff's schedule initially changed so that he could better oversee Riverside's engineering staff, and changed again when Plaintiff proved unable to manage that staff. (NYSDHR Order 2). Riverside also informed the NYSDHR that it had twice told Plaintiff that he could move into the Chief Engineer's office — but Plaintiff declined to do so. (*Id.*). And although Plaintiff claimed that he was terminated "without any reason," the NYSDHR appears to have credited Riverside's account that it fired Plaintiff because he received a negative performance

evaluation in June 2015, failed to improve, and did not "adhere to his new [work] schedule." (*Id.* at 1-2).

In light of these findings, the NYSDHR dismissed Plaintiff's complaint and notified him of his right to appeal to the New York State Supreme Court. (NYSDHR Order 3).

## 2. Plaintiff's Federal Lawsuit

Plaintiff filed his initial Complaint on November 23, 2016. (Dkt. #1). The Court held an initial pretrial conference on February 21, 2017 (Minute Entry Dated 2/21/17), and Plaintiff filed his First Amended Complaint on March 15, 2017 (Dkt. #15). In the First Amended Complaint, Plaintiff brought claims under Title VII, the NYSHRL, and the NYCHRL against Riverside, Soto, and Monti. (FAC 1). Plaintiff claimed that he had been wrongfully terminated, subjected to "[u]nequal terms and conditions of ... employment," and retaliated against in violation of those statutes. (*Id.* at 2).

Defendants (again, Soto and Riverside) filed their motion to dismiss and supporting papers on May 26, 2017. (Dkt. #27). On August 8, 2017 — nearly nine months after Plaintiff initiated this action — the Court dismissed Monti without prejudice under Rule 4(m). (Dkt. #33). Plaintiff filed his opposition to Defendants' motion to dismiss on August 21, 2017 (Dkt. #34), and briefing concluded when Defendants filed their reply on September 13, 2017 (Dkt. #37).

## DISCUSSION

Plaintiff does not dispute most of the arguments Defendants make in support of their motion to dismiss. Plaintiff concedes that the Court should dismiss his Title VII claim against Soto. (Pl. Opp. 7). And Plaintiff does not address Defendants' argument that the Court lacks jurisdiction to hear his NYSHRL and NYCHRL claims against Riverside. (*See id.* at 4, 7; *cf. id.* at 7 (asking Court to deny Defendants' motion, presumably in its entirety)). Indeed, Plaintiff takes issue with only one of Defendants' arguments, namely, that the election-of-remedies doctrine bars this Court from considering Plaintiff's NYSHRL and NYCHRL claims against Soto. (*Id.* at 4-7).

The Court disagrees. True, Plaintiff did not name Soto in his NYSDHR Complaint (although he did discuss Riverside's "HR Director" in his NYSDHR proceeding). But that does not give the Court subject matter jurisdiction to entertain Plaintiff's NYSHRL and NYCHRL claims against Soto. The election-of-remedies doctrine cuts a wide swath: It precludes the Court from hearing *any* claims that arise out of the events that formed the basis of Plaintiff's NYSDHR Complaint. And because the First Amended Complaint's NYSHRL and NYCHRL claims against Riverside and Soto plainly arise out of those events, the Court lacks jurisdiction to consider those claims.

Accordingly, the Court grants Defendants' motion to dismiss. The Court will begin by addressing Defendants' election-of-remedies argument (which Defendants bring under Rule 12(b)(1)), and then turn briefly to their Title VII argument (which they bring under Rule 12(b)(6)).

11

## A.    The Election-of-Remedies Doctrine Divests This Court of Subject-Matter Jurisdiction to Hear Plaintiff's NYSHRL and NYCHRL Claims Against Defendants

### 1.    Applicable Law

#### a.    Rule 12(b)(1)

Rule 12(b)(1) permits a party to move to dismiss a complaint for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Lyons* v. *Litton Loan Servicing LP*, 158 F. Supp. 3d 211, 218 (S.D.N.Y. 2016) (quoting *Makarova* v. *United States,* 201 F.3d 110, 113 (2d Cir. 2000)).

The Second Circuit has drawn a distinction between two types of Rule 12(b)(1) motions: (i) facial motions and (ii) fact-based motions.[5] *See Katz* v.

---

[5]    The leading Second Circuit case on the differences between fact-based and facial Rule 12(b)(1) motions — *Carter* v. *HealthPort Technologies, LLC* — discussed those differences in the context of Rule 12(b)(1) motions challenging a party's standing to sue. 822 F.3d 47, 56-57 (2d Cir. 2016); *cf. id.* at 56 ("A Rule 12(b)(1) motion challenging subject matter jurisdiction may be either facial or fact-based."). But district courts in the Second Circuit have addressed these differences when adjudicating Rule 12(b)(1) motions raising non-standing arguments. *See Sit N' Stay Pet Servs., Inc.* v. *Hoffman*, No. 17 Civ. 116 (LJV), 2017 WL 3866026, at *3 (W.D.N.Y. Sept. 5, 2017) (rejecting Rule 12(b)(1) motion premised on argument that plaintiff failed to establish interstate commerce element of Lanham Act); *Joseph* v. *Soc. Sec. Admin.*, No. 16 Civ. 3377 (GRB), 2017 WL 1067804, at *1-7 (E.D.N.Y. Feb. 28, 2017) (granting Rule 12(b)(1) motion filed by Social Security Administration arguing that sovereign immunity divested court of subject-matter jurisdiction to hear plaintiff's claims), *report and recommendation adopted sub nom. Joseph* v. *Soc. Sec. Office*, No. 16 Civ. 3377 (JFB), 2017 WL 1078570 (E.D.N.Y. Mar. 20, 2017).

So too here. Defendants do not argue that Plaintiff lacks standing to sue. They argue that the election-of-remedies doctrine — which derives from the text of the NYSHRL and NYCHRL — bars this Court from entertaining his claims. Rule 12(b)(1) is the proper vehicle for this argument. *See, e.g., Garcia* v. *Yonkers Bd. of Educ.*, 188 F. Supp. 3d 353, 364-65 (S.D.N.Y. 2016). And *Carter*'s discussion of the distinction between facial and fact-based Rule 12(b)(1) motions helps the Court resolve that argument, particularly because Defendants and Plaintiff rely on different documents in making and opposing it, respectively.

*Donna Karan Co., L.L.C.*, 872 F.3d 114, 119 (2d Cir. 2017). A facial

Rule 12(b)(1) motion is one "based solely on the allegations of the complaint or

the complaint and exhibits attached to it." *Carter* v. *HealthPort Techs., LLC*,

822 F.3d 47, 56 (2d Cir. 2016). A plaintiff opposing such a motion bears "no

evidentiary burden." *Id.* Instead, to resolve a facial Rule 12(b)(1) motion, a

district court must "determine whether [the complaint and its exhibits] allege[ ]

facts that" establish subject-matter jurisdiction. *Id.* (quoting *Amidax Trading*

*Grp.* v. *S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011) (per curiam)). And to

make that determination, a court must accept as true the complaint's

allegations "and draw[ ] all reasonable inferences in favor of the plaintiff." *Id.* at

57 (internal quotation marks and citation omitted).

"Alternatively, a defendant is permitted to make a fact-based

Rule 12(b)(1) motion, proffering evidence beyond the" complaint and its

exhibits. *Carter*, 822 F.3d at 57. "In opposition to such a motion, [a plaintiff]

must 'come forward with evidence of their own to controvert that presented by

the defendant,' or may instead 'rely on the allegations in the[ir p]leading if the

evidence proffered by the defendant is immaterial because it does not

contradict plausible allegations that are themselves sufficient to show

standing.'" *Katz*, 872 F.3d at 119 (quoting *Carter*, 822 F.3d at 57). If a

defendant supports his fact-based Rule 12(b)(1) motion with "material and

controverted" "extrinsic evidence," a "district court will need to make findings of

fact in aid of its decision as to" subject matter jurisdiction. *Carter*, 822 F.3d

at 57.

Courts must "liberally construe pleadings and briefs submitted by *pro se*
litigants, reading such submissions to raise the strongest arguments they
suggest." *McLeod* v. *Jewish Guild for the Blind*, 864 F.3d 154, 156-57 (2d Cir.
2017) (quoting *Bertin* v. *United States*, 478 F.3d 489, 491 (2d Cir. 2007)). But
"jurisdictional requirements are not relaxed based on a litigant's *pro se* status."
*Escoffier* v. *MFY Legal Servs.*, No. 13 Civ. 8089 (LGS), 2015 WL 221048, at *1
(S.D.N.Y. Jan. 15, 2015). Thus, "[d]espite the lenient standards with which
courts review *pro se* complaints, *pro se* plaintiffs must establish subject matter
jurisdiction." *Smith* v. *Sch. of Visual Arts*, No. 15 Civ. 8049 (RA), 2016 WL
3440553, at *2 (S.D.N.Y. June 9, 2016) (internal quotation marks omitted)
(quoting *Levi* v. *RSM McGladrey, Inc.*, No. 12 Civ. 8787 (ER), 2014 WL 4809942,
at *3 (S.D.N.Y. Sept. 24, 2014)).

### b.    The Election-of-Remedies Doctrine

"Under the so called 'election of remedies' doctrine, a complainant who
files a complaint with either the NYSDHR or [the New York City Commission on
Human Rights (the "NYCCHR")] cannot subsequently sue in court on the same
claims." *Bray* v. *N.Y.C. Dep't of Educ.*, No. 11 Civ. 7884 (DLC), 2013 WL
3481532, at *11 (S.D.N.Y. July 10, 2013). That rule is set forth in the text of
both the NYSHRL and the NYCHRL. *See Higgins* v. *NYP Holdings, Inc.*, 836 F.
Supp. 2d 182, 187 (S.D.N.Y. 2011).

Section 297(9) of the New York State Executive Law (which is part of the
NYSHRL) reads, in relevant part:

> Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for damages, ... unless such person had filed a complaint hereunder or with any local commission on human rights, ... provided that, where the division has dismissed such complaint on the grounds of administrative convenience, on the grounds of untimeliness, or on the grounds that the election of remedies is annulled, such person shall maintain all rights to bring suit as if no complaint had been filed with the division.

N.Y. Exec. Law § 297(9).  Section 8-502(a) of the New York City Administrative Code "contains an election of remedies clause analogous to that of the NYSHRL." *Dixon* v. *Krasdale Foods, Inc.*, No. 13 Civ. 3045 (CM), 2013 WL 6334439, at *2 (S.D.N.Y. Dec. 4, 2013) (internal quotation marks and citation omitted).  It states:

> Except as otherwise provided by law, any person claiming to be aggrieved by an unlawful discriminatory practice as defined in chapter one of this title or an act of discriminatory harassment or violence as set forth in chapter six of this title shall have a cause of action in any court of competent jurisdiction ... unless such person has filed a complaint with the City Commission on Human Rights or with the State Division of Human Rights with respect to such alleged unlawful discriminatory practice.

N.Y.C. Admin. Code § 8-502(a).

Thus, under the NYSHRL and NYCHRL, "the remedies of administrative review through the [NYSDHR and NYCCHR] or judicial review are *mutually exclusive*[.]" *Williams* v. *City of N.Y.*, 916 F. Supp. 2d 517, 521 (S.D.N.Y. 2013) (citation omitted).  "The election of remedies bar is jurisdictional; a complaint that has previously been dismissed by the NYSDHR or NYCCHR must be

dismissed for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).” *Marecheau* v. *Equal Employment Practices Comm’n*, No. 13 Civ. 2440 (VEC), 2014 WL 5026142, at \*4 (S.D.N.Y. Sept. 30, 2014).

The election-of-remedies doctrine imposes two kinds of jurisdictional bars: one direct, and one derivative. *See Smith*, 2016 WL 3440553, at \*2. The direct bar divests courts of subject-matter jurisdiction “over any claims previously submitted to the NYSDHR” or NYCCHR (the direct bar). *Id.* And the derivative bar prevents courts from hearing “claims arising out of the same incident[s] on which [an NYSDHR or NYCCHR] complaint was based.” *Id.* (internal quotation mark omitted) (quoting *Higgins*, 836 F. Supp. 2d at 188). Because of this derivative bar, “[c]laims need not be identical in order to be barred by the state or city election of remedies provisions.” *Rosario* v. *N.Y.C. Dep’t of Educ.*, No. 10 Civ. 6160 (DLC), 2011 WL 1465763, at \*2 (S.D.N.Y. Apr. 15, 2011). To the contrary, if there is “a sufficient identity of issue[s] … between” the claims a plaintiff pursued before the NYSHRL or NYCCHR, and those he alleges in a federal complaint, then the election-of-remedies doctrine precludes courts from adjudicating those federal claims. *Id.* (quoting *Spoon* v. *Am. Agriculturalist, Inc.*, 478 N.Y.S.2d 174, 175 (App. Div. 3d Dep’t 1984)).

The election-of-remedies’ derivative bar is expansive. A plaintiff cannot escape the bar by raising a new legal theory, if that theory is premised on the same events underlying his NYSDHR or NYCCHR complaint. *Owens* v. *Starbucks Corp.*, 37 N.Y.S.3d 207, 2016 WL 1602753, at \*3 (N.Y. Sup. Ct. Apr. 21, 2016); *see, e.g.*, *Rasmy* v. *Marriott Int’l, Inc.*, No. 16 Civ. 4865 (AJN),

16

2017 WL 773604, at *2, 5 (S.D.N.Y. Feb. 24, 2017) (finding that election-of-remedies doctrine barred plaintiff from pursuing NYCHRL hostile work environment claim in federal court, even though he sought relief under only the NYSHRL before the NYSDHR, because in both actions plaintiff's claims "ar[o]se from the same discriminatory practices" and were "premised on substantially the same series of incidents" (internal quotation marks and citations omitted)); *Musaji* v. *Banco do Brasil*, No. 10 Civ. 8541 (RJH), 2011 WL 2507712, at *5 (S.D.N.Y. June 21, 2011) (collecting New York cases supporting the proposition that "a plaintiff merely asserting a new legal theory in front of a court based on the same underlying conduct alleged at the [NYCCHR] is barred from the judicial remedy sought"); *Rosario*, 2011 WL 1465763, at *2 (finding that district court lacked subject-matter jurisdiction to consider plaintiff's claim that he was suspended from work because of employer's national-origin discrimination, even though before the NYSDHR plaintiff argued that he was discriminated against "based on [his] arrest record, marital status, and sex," because in both proceedings plaintiff claimed that "he was suspended due to a discriminatory practice" and "the underlying facts of the claim [plaintiff] brought before the NYSDHR [were] almost identical to those alleged in [his federal] case").

Nor can a plaintiff evade the derivative bar by suing a defendant who was not named in his NYSDHR or NYCCHR proceeding. *See, e.g.*, *Vargas* v. *Reliant Realty*, No. 13 Civ. 2341 (PGG), 2014 WL 4446165, at *7-8 & n.9 (S.D.N.Y. Sept. 9, 2014) (finding that plaintiff could not pursue NYSHRL discrimination claim against defendant not named in plaintiff's NYSDHR complaint, because

"the claims underlying [plaintiff's] NYSDHR complaint [were] identical to those raised in" his federal suit); *El Sayed* v. *Hilton Hotels Corp.*, No. 07 Civ. 11173 (DC), 2008 WL 3362828, at *3, 5 (S.D.N.Y. Aug. 7, 2008) (reaching same result where plaintiff sued two defendants not named in his NYSDHR complaint).

Put simply, "[w]hen a plaintiff files a complaint with the [NYCCHR] or [NYSDHR], no [NYCCHRL] or [NYSHRL] claims arising from the same facts can be adjudicated in federal court." *Alston* v. *Microsoft Corp.*, No. 08 Civ. 3547 (DC), 2009 WL 1116360, at *4 (S.D.N.Y. Apr. 27, 2009). So when a plaintiff files a federal lawsuit based on "the same operative events as" a prior NYSDHR or NYCCHR action, courts lack subject matter jurisdiction to hear those claims. *Marecheau*, 2014 WL 5026142, at *4 (internal quotation marks and citation omitted).

### 2.    Analysis

The central legal question in this Opinion is whether this Court has subject matter jurisdiction to hear Plaintiff's NYSHRL and NYCHRL claims against Soto. The Court concludes that it does not — even though Plaintiff did not name Soto as a defendant in his NYSDHR Complaint. The election-of-remedies doctrine plainly applies here, because the First Amended Complaint's allegations arise out of the same operative events as Plaintiff's NYSDHR action. In consequence, Plaintiff cannot pursue his NYSHRL or NYCHRL claims against Riverside (as Plaintiff appears to concede) or Soto.

Reaching this conclusion requires two steps. First, the Court concludes that Defendants have filed a facial, not a fact-based, Rule 12(b)(1) motion.

Defendants' brief focuses exclusively on the allegations in the First Amended Complaint and the NYSDHR Order, the latter of which is attached to the First Amended Complaint. (Def. Br. 2, 11-13). Put another way: Defendants' Rule 12(b)(1) arguments are "based solely on the allegations of the [First Amended Complaint] and [an] exhibit[ ] attached to it." *Carter*, 822 F.3d at 56. To resolve Defendants' facial motion, the Court must thus accept the First Amended Complaint's allegations as true, and determine whether those allegations (and the NYSDHR Order) establish this Court's subject-matter jurisdiction. *Id.* at 56-57 (internal quotation marks and citations omitted).[6]

That leads to the second step: The First Amended Complaint and NYSDHR Order confirm that the Court lacks subject matter jurisdiction to

---

[6]    To be sure, even if the Court construed Defendants' Rule 12(b)(1) motion as fact-based — and looked beyond the First Amended Complaint and its exhibits to resolve it — the motion would still succeed. Plaintiff's opposition brief and Defendants' reply discuss two extrinsic documents: Plaintiff's NYSDHR Complaint and his NYSDHR Rebuttal. (Pl. Opp. 4, 5; Def. Reply 2). Those documents only underscore the Court's conclusion that the election-of-remedies doctrine prevents Plaintiff from pursuing his NYSHRL and NYCHRL claims here.

Much of the NYSDHR Complaint's text is very faint and difficult to read. But it clearly references Plaintiff's time working in the boiler room filed with "dirt, dust[,] and [a]sbestos," and discusses Monti's termination of Plaintiff. (NYSDHR Compl. 8). In his NYSDHR Complaint, Plaintiff also alleged that he reported Monti's discrimination to "HRD" (i.e., Soto, Riverside's Human Resources Director). (*Id.* at 12). Plaintiff's NYSDHR Rebuttal is much easier to read. There, Plaintiff wrote that Monti was "deadly against the Asian" and "VERY MUCH AGAINST THE ASIAN (INDIAN) Community." (NYSDHR Rebuttal 1). Plaintiff also discussed Monti refusing to give Plaintiff a chair when he visited Monti's office (*id.* at 2); how working in the boiler room made Plaintiff ill (*id.* at 2-3); the time when Plaintiff showed "HRD" the conditions of the boiler room (*id.* at 3); and Plaintiff's "wrongful termination" (*id.*).

The NYSDHR Complaint and (even moreso) the NYSDHR Rebuttal leave no doubt that the claims Plaintiff filed with the NYSDHR and the claims he is pursuing here are based on the same events. Looking beyond the First Amended Complaint merely reinforces this Opinion's conclusion: The Court lacks subject-matter jurisdiction to entertain Plaintiff's NYSHRL and NYCHRL claims. No matter what type of Rule 12(b)(1) motion Defendants had filed, their election-of-remedies argument would be meritorious.

consider Plaintiff's NYSHRL and NYCHRL claims. And that conclusion applies with equal force to Riverside and Soto.

Before the NYSDHR, Plaintiff argued that Riverside had discriminated and retaliated against him in violation of the NYSHRL because of his race, "color," and age. (NYSDHR Order 1). Plaintiff based that claim on Monti's persistent anti-Indian discrimination and Plaintiff's alleged wrongful termination. (*Id.* at 2-3). And Plaintiff supported his NYSHRL arguments by relying on events like Monti forcing Plaintiff to work in the boiler house, and Monti's termination of Ali in 2015. (*Id.* at 2). Moreover, before the NYSDHR, Plaintiff alleged that he had reported Monti's behavior internally within Riverside. (*Id.* at 3).

These are the same claims, based on the same events, that are at the heart of the First Amended Complaint. As a result, the Court lacks subject matter jurisdiction to adjudicate those claims against Defendants — Riverside and Soto. *See Marecheau*, 2014 WL 5026142, at *4.

Plaintiff tries to resist this conclusion in two ways. Both are unavailing. He argues first that his NYSDHR Complaint "did not contain information or facts about Defendant Soto." (Pl. Opp. 4). This is not totally accurate, because it appears that Plaintiff mentioned Riverside's "HR Director" to the NYSDHR. (NYSDHR Order 1). But more importantly, it misses its mark. The election-of-remedies bar applies to defendants not named in a plaintiff's administrative action, so long as the claims against that new defendant are the same as the claims the plaintiff already pursued. *See, e.g.*, *Vargas*, 2014 WL

4446165, at *7-8 & n.9.  Just so here.  Plaintiff did not refer explicitly to Soto in his NYSDHR Complaint.  But the claims he raised in the NYSDHR Complaint, and the events on which he based those claims, are identical to the claims and events Plaintiff discusses in his First Amended Complaint.  And because of this identity of claims, the election-of-remedies bar applies with equal force to Riverside and Soto.

Second, Plaintiff argues that the First Amended Complaint is based on events that Plaintiff did not address in his NYSDHR Complaint.  (Pl. Opp. 5). Here too, Plaintiff is correct.  But here again, Plaintiff cannot ward off the election-of-remedies doctrine.  Plaintiff contends that the First Amended Complaint, unlike his NYSDHR Complaint, discusses Plaintiff's "attempts to get [Soto] to ameliorate the discriminatory behavior by Monti, … Soto's comments towards Plaintiff when she witnessed [his] workspace[,] and her direct involvement in Plaintiff's firing."  (*Id.*).  But these events all relate to the issues at the core of Plaintiff's NYSDHR Complaint: Monti's discrimination against Plaintiff and Plaintiff's wrongful termination.  Soto's newly-alleged involvement in those events does not change the fact that Plaintiff already sought redress for them before the NYSDHR.  And in turn, the Court lacks jurisdiction to consider Plaintiff's NYSHRL and NYCHRL claims based on these events.

For all of these reasons, the Court grants Defendants' Rule 12(b)(1) motion.  But it parts ways with Defendants over the remedy.  Defendants have asked this Court to dismiss Plaintiff's NYSHRL and NYCHRL claims with prejudice. (Def. Br. 15).  This, the Court cannot do.  "[W]hen a case is

dismissed for lack of federal subject matter jurisdiction, 'Article III deprives federal courts of the power to dismiss [the] case with prejudice.'" *Katz*, 872 F.3d at 121 (quoting *Hernandez* v. *Conriv Realty Assocs.*, 182 F.3d 121, 123 (2d Cir. 1999)). Thus, the Court dismisses Plaintiff's NYSHRL and NYCHRL claims against Defendants without prejudice.

## B. Plaintiff's Title VII Claim Against Soto Fails Because Title VII Does Not Permit Individual Liability

The Court's analysis of Plaintiff's Title VII claim against Soto is more straightforward. Soto "cannot be liable under Title VII, because '[t]here is no individual liability under Title VII.'" *Cromwell-Gibbs* v. *Staybridge Suite Times Square*, No. 16 Civ. 5169 (KPF), 2017 WL 2684063, at *6 n.4 (S.D.N.Y. June 20, 2017) (quoting *Gomez* v. *N.Y.C. Police Dep't*, 191 F. Supp. 3d 293, 302 (S.D.N.Y. 2016)). Plaintiff concedes that the Court should dismiss his Title VII claim as to Soto. (Pl. Opp. 7). And because Defendants bring their argument about Plaintiff's Title VII claim under Rule 12(b)(6), not Rule 12(b)(1), the Court will dismisses that claim, as to Soto, with prejudice.

## CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is GRANTED. Plaintiff's NYSHRL and NYCHRL claims are DISMISSED WITHOUT PREJUDICE. Plaintiff's Title VII claim against Soto is DISMISSED WITH PREJUDICE. The Clerk of Court is directed to terminate the motion appearing at docket entry 27. The Clerk of Court is further directed to terminate Soto as a defendant in this matter, because all of Plaintiff's claims against her have been dismissed.

One claim remains in this lawsuit: Plaintiff's Title VII claim against Riverside. The parties are ORDERED to file a proposed Civil Case Management Plan and Scheduling Order **on or before November 27, 2017.**

SO ORDERED.

Dated: November 6, 2017
New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge


*Sent by First Class Mail to:*
Kush C. Chakraborty
4405 Macnish Street
Apt 1-E Elmhurst
Elmhurst, NY 11373